UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM JAMES HASTINGS,

        Petitioner,                  Case No. 14-cv-12010

v                                    Honorable Thomas L. Ludington

MARY BERGHUIS,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Williams James Hastings, a state court prisoner confined at the Earnest C. Brooks Correctional Facility, was convicted of first-degree murder following a jury trial in the Jackson County Circuit Court, and was sentenced as a fourth habitual offender to life imprisonment without parole. On May 20, 2014 Petitioner, through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that he is being held in violation of his constitutional rights. In support of this assertion, Petitioner argues that he is actually innocent of the murder conviction, that the prosecutor engaged in various forms of misconduct, and that his trial and appellate counsel were ineffective. Respondent has filed an answer to the petition, arguing that Petitioner's claims lack merit. Because Respondent is correct, Petitioner Hastings' petition will be denied.

**I.**

The following relevant facts relied upon by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

> This case arose out of the killing of Vicki Cook, whose body was discovered in a state of advanced decomposition in an undeveloped marshland area on August 2, 2002. The date of her death was estimated to have been July 27, 2002. In late July 2002, defendant and an associate picked Cook up as a prostitute for sex in exchange for drugs and, in fact, smoked crack cocaine with her at another friend's house. Cocaine was found in Cook's body. Defendant and Cook left together, at which time Cook was wearing clothes, including a denim long-sleeved shirt depicting a Looney Tunes character, that belonged to Teresa Merrifield, defendant's girlfriend. Among other things, defendant testified that he told Merrifield that he had killed Cook.[1] Merrifield also testified at trial that defendant had told her that he killed Cook.

*People v. Hastings*, No. 262698, 2006 WL 3333094, *1 (Mich. Ct. App. Nov. 16, 2006). The Court of Appeals further noted that the cause of Ms. Cook's death was manual strangulation. *Id*. at * 3.

**A.**

Following his conviction, Petitioner Hastings filed a motion for a new trial with the trial court based upon newly-discovered evidence that another man, Thomas Mowrer, had confessed to the crime. The trial court denied the motion. Petitioner then filed an appeal as of right with the Michigan Court of Appeals, arguing that the trial court erred in rejecting his motion for a new trial based on the newly discovered evidence. He also argued that the prosecutor had engaged in misconduct in three ways: (1) by failing to disclose "the extent of a deal" with a key prosecution witness; (2) by eliciting improper character evidence; and (3) by making an improper self-bolstering argument.

The Michigan Court of Appeals affirmed Hasting's conviction, finding that any prosecutorial misconduct was harmless, and agreeing with the trial court that Thomas Mowrer's "confession" was a false confession, as evidenced by glaring inconsistencies between his

---

[1] The Michigan Court of Appeals indicates that the petitioner testified at trial. The record, however, indicates that he did not actually testify at trial, and that such statements were made to police and subsequently admitted into evidence at trial.

- 2 -

statements and the actual facts of the case. *See Hastings*, 2006 WL 3333094 at *1-*3. Petitioner filed an application for leave to appeal to the Supreme Court, which was denied, with two justices dissenting. *See People v. Hastings*, 478 Mich. 914; 733 N.W.2d 19 (2007). Petitioner moved for reconsideration, which was denied. *People v. Hastings*, 480 Mich. 864; 737 N.W.2d 705 (2007).

**B.**

Petitioner filed his first petition for habeas corpus relief on August 7, 2008. *See Hastings v. Berghuis*, No. 1:08-CV-13478, ECF No. 1, (E.D. Mich. Aug. 7, 2008). Because the petition contained unexhausted claims, the Court dismissed the petition without prejudice so as to allow Petitioner to exhaust his claims in state court. *Id.* at ECF No. 22.

After his petition was dismissed, on December 18, 2009, Petitioner filed a motion for relief from judgment with the state court, which was subsequently denied. *People v. Hastings*, No. 04-000690-FH (Jackson County Cir. Ct. August 11, 2010). Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals granted the application and issued an unpublished opinion affirming the conviction. *People v. Hastings*, No. 299960, 2011 WL 5965782 (Mich. Ct. App. Nov. 29, 2011). The Michigan Supreme Court ultimately denied the petitioner leave to appeal. *See People v. Hastings*, 495 Mich. 946; 843 N.W. 2d 527 (2014).

Having exhausted his claims in state court, Petitioner Hastings filed the current petition for habeas corpus on May 20, 2014. *See* ECF No. 1. Through the Petition, Hastings seeks habeas corpus relief based on the following claims: (1) actual innocence, as both a "gateway claim" and as a "factual consideration within the context of evaluating whether he was prejudiced by violations of federal law;" (2) prosecutorial misconduct for failing to disclose exculpatory

- 3 -

evidence as required by *Napue v. Illinois*, 360 U.S. 264 (1950) and *Brady v. Maryland*, 371 U.S. 83 (1963); (3) Ineffective assistance of trial counsel; and (4) ineffective assistance of appellate counsel on direct appeal.

## II.

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*

A state court adjudication is contrary to Supreme Court precedent under § 2254(d)(1) if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or (2) " the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted). A state court adjudication involves an unreasonable application of federal law under § 2254(d)(1) if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008) (internal quotation marks omitted).

"In order for a federal court to find a state court's application of [Supreme Court] precedent unreasonable, the state court's decision must have been more than incorrect or erroneous," but rather "must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotations and citations omitted):

> [E]ven clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citations, quotation marks, and alterations omitted). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). "Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). Rather, the pertinent question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702. In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (internal quotation marks omitted).

### A.

Petitioner Hasting's actual innocence claims will be addressed first. To the extent that Petitioner seeks relief on a freestanding actual innocence claim, he is not be entitled to habeas relief. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of

actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., see also McQuiggin v. Perkins,* 133 S. Ct. 1924, 1931 (2013) ("[w]e have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). Freestanding claims of actual innocence are thus not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007) (collecting cases).

The Supreme Court's decision in *House v. Bell*, 547 U.S. 518 (2006) does not alter this Court's adjudication of the petitioner's claim, as the Supreme Court again in that case declined to resolve whether a habeas petitioner may bring a freestanding claim of actual innocence. *Id.* at 554-55. Although the Supreme Court in *House* noted that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim," *Id.* (quoting *Herrera,* 506 U.S. at 417), the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside of the death-penalty context. Petitioner is therefore not entitled to relief for a freestanding actual innocence claim under Supreme Court precedent. *See Wright v. Stegall*, 247 F.App'x. 709, 711 (6th Cir. 2007).

Even reaching the merits of Petitioner's claim would not provide him relief. First, Petitioner's actual innocence claim is undercut by the state court findings that Thomas Mowrer' purported confession was a false confession. The Michigan Court of Appeals found that the

trial court reasonably found that Thomas Mowrer's confession contradicted the evidence produced at trial numerous times as follows:

> Mowrer's statement was inexplicably vague; for example, he could not even say whether the crime occurred during the winter or the summer, and he did not know precisely where it took place. Moreover, the confession contradicted established facts of the case, including the known manner of Cook's death, manual strangulation. Mowrer failed to mention Cook's pronounced limp and limited use of one of her arms, and he described her as having brown hair, when in fact she had blonde hair. Mowrer described a bloodstained log and a picnic table at the scene of the crime, but neither was found. Mowrer claimed to have taken the victim's clothing, but the victim's sock and distinctive Looney Tunes shirt were left at the scene. Mowrer claimed that he had told over 30 friends about the murder, but none of those friends have come forward.

*Hastings*, 2006 WL 3333094, at *3.

This is not an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d). The record reflects that Petitioner made statements in connection with Cook's death to numerous individuals, who testified at trial. Michael Scott Cole testified, "But then I asked him if he did it and he didn't want to state it first, he didn't say yes or no. And then he started getting a little depressed and I asked him again, and he said yes, that he did do it. He never told me why though." Doc # 11-2, 8/11/2004, p. 43, Pg ID 304. Brian Howard Milligan testified "I just remember saying, 'Did you have anything to do with this?' and he was always like this (hitting hands together), crying and, I mean, that's what I remember." Doc # 11-2, 08/11/2004, p. 26-27, Pg ID 286-287. Milligan further testified that he asked Petitioner if he was involved in Cook's death and petitioner responded "Yup." *Id.* at 27. At trial, Milligan testified that the petitioner told him, "I lost it." Doc # 11-4, 03/08/2005, p. 330, Pg ID 669. Milligan also testified that the petitioner told him over the phone, "They have nothing. Don't worry. They have nothing." Doc # 11-4, 03/08/2005, p. 60, Pg ID 645. Theresa Merrifield testified at trial "I know at the time he was speeding and drinking the beer he was

talking and he was telling me about his family and he told me that no one hurts his family and he killed Vicki. I'm not sure he used her name though. He said he killed her out of revenge is what he told me." Doc # 11-2, 08/11/2004, p. 57, Pg ID 318. Ryan McLaughlin testified that Petitioner told him "'The biggest mistake that I made in this case was telling Teresa that I killed Vicki Cook,' and that if she said anything, 'I'll kill her too.' Those were his exact words. And at that point in time, that's when I kind of figured that this guy was a murderer. And I, at that point in time, I was a little bit scared of him." Doc # 11-5, 03/10/2005, p. 126, Pg ID 952.

Mr. Mowrer's statement is inconsistent with the evidence produced at trial; therefore, producing Mowrer's statement at trial likely would not have changed the outcome of Petitioner's trial. Petitioner's actual innocence claim is therefore without merit. *See Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007) (finding a petitioner's actual innocence claim not cognizable on habeas review based on a weak, unsworn recantation statement from one of several witnesses who testified at trial concerning the petitioner's repeated admissions of guilt, a confession from someone who was strongly motivated to confess falsely for ulterior reasons and who admitted to having confessed falsely, and a "qualified" polygraph report.). Petitioner therefore is not entitled to relief on his first claim.

**B.**

In his second claim for relief, Petitioner argues that the prosecutor committed misconduct by using false and perjured testimony and by violating his obligations under *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Specifically, Petitioner contends that the prosecutor committed misconduct by permitting Ms. Merrifield to commit perjury during her testimony. Ms. Merrifield testified that she had not made any deals with the prosecution in exchange for her testimony, but admitted that she had a felony drug case pending in another court. In fact, Ms.

Merrifield had been allowed to plead guilty to a reduced misdemeanor charge in exchange for her testimony against Petitioner.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). A denial of due process occurs when a prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois,* 360 U.S. 264, 269 (1959) (internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). In a petition for habeas relief, the habeas petitioner bears the burden of establishing a *Giglio* violation, and a petition should be granted if perjury by the government witness undermines the confidence in the outcome of the trial. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003).

"It is well established that an express agreement between the prosecution and a witness is possible impeachment material that must be turned over under *Brady.*" *Bell v. Bell*, 512 F.3d 223, 233 (6th Cir. 2008) (citing *Giglio*, 405 U.S. at 154-55). "The existence of a less formal, unwritten or tacit agreement is also subject to *Brady's* disclosure mandate." *Id*. However, the mere fact that a witness desired favorable treatment in return for his testimony, does not, standing alone, demonstrate the existence of an implied agreement with the prosecutor. *Id.*

The Michigan Court of Appeals declined to reverse the trial court on the basis of Ms. Merrifield's perjury for the following reasons:

> On the narrow facts of this case, we decline to reverse on the basis of Merrifield's perjury. First, the only significant testimony she presented was that defendant had told her that he killed Cook, which defendant himself testified he had told Merrifield. Second, defendant's trial attorney testified that he probably

- 9 -

> would not have cross-examined Merrifield on the matter even if he had known about the deal. But most significantly to us, the trial court, after having had the benefit of an evidentiary hearing regarding defendant's motion for a new trial, specifically found credible the prosecution's claim that they had no actual knowledge of Merrifield's deal at the time of trial due to a coincidence and a paperwork mix-up. Presuming harmlessness, as we do in this case, we reiterate that perjury is unacceptable and incompatible with the prosecutor's duty to seek justice. However, in this case we place great reliance on our deference to the trial court's superior position to evaluate evidence and credibility.

*Hastings*, 2006 WL 3333094, at *1.

While Petitioner has sustained his burden in showing that Merrifield committed perjury, he cannot demonstrate that the prosecutor knew Ms. Merrifield's testimony pertaining to the denial of any plea offers was false. *Coe v. Bell*, 161 F.3d at 343. The trial court made a finding that the prosecution did not know of the plea offer at the time of trial, and the Michigan Court of Appeals upheld this finding on appeal. Petitioner has not demonstrated that this finding was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d).

Furthermore, the prosecutor's failure to disclose the alleged plea bargain with Ms. Merrifield or to correct Ms. Merrifield's testimony was not material to Petitioner's conviction, where Ms. Merrifield's testimony was corroborated by other witness testimony and evidence produced at trial. Any error was harmless, in light of the overwhelming evidence against Petitioner. For purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). As set forth above, there were numerous record instances in which Petitioner admitted his involvement with Cook's death. As such, the prosecutor's failure to disclose the plea agreement with Ms. Merrifield in an unrelated

drug case pending in another court was harmless error. *See e.g. Wesener v. Straub,* 110 F.App'x. 614, 625-26 (6th Cir. 2004). Petitioner's second claim is therefore without merit.

## C.

In his remaining claims for relief, Petitioner argues that he was denied the effective assistance of trial and appellate counsel. Respondent contends that these claims are procedurally defaulted because Petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise them in his appeal of right, as required by M.C.R. 6.508(D)(3) (holding that, where a defendant seeks relief from judgment based on grounds which could have been raised on direct appeal but were not, a court may grant relief only where the defendant demonstrates good cause for failing to raise the grounds on direct appeal and actual prejudice).

### i.

Petitioner's ineffective assistance of trial counsel claim will be addressed first. In the case of a habeas petition, when the state courts clearly and expressly rely upon a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the question of prejudice. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).

- 11 -

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Supreme Court rejected the petitioner's post-conviction appeal "because we are not persuaded that the questions presented should be reviewed by this Court." This order, however, did not refer to subsection (D)(3) nor did it mention Petitioner's failure to raise his ineffective assistance of trial counsel claims on direct appeal as a rationale for rejecting his post-conviction claims. Because the Michigan Supreme Court order is ambiguous as to whether it refers to procedural default or a denial of post-conviction relief on the merits, the order is unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of the petitioner's claims. *Id.*

The Michigan Court of Appeals denied Petitioner's post-conviction appeal "because the alleged grounds for relief could have been raised in defendant's appeal by right[,]" and found that good cause had not been established to support Petitioner's allegation that his appellate counsel was ineffective for failing to raise ineffectiveness of trial counsel in Petitioner's appeal by right. *People v. Hastings,* No. 299960, 2011 WL 5965782, at *2 (Mich. Ct. App. Nov. 29, 2011). The Michigan Court of Appeals thus denied Petitioner post-conviction relief based on

the procedural grounds, and Petitioner's post-conviction claims are procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F.3d 284, 292-93 (6th Cir. 2007). *See also Howard v. Bouchard,* 405 F.3d 459, 477 (6th Cir. 2005). The fact that the Michigan Court of Appeals also discussed the merits of Petitioner's claims does not alter this analysis. *See Alvarez v. Straub,* 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). Petitioner's ineffective assistance of trial counsel claims are procedurally defaulted.

### ii.

In an attempt to excuse the procedural default, Petitioner argues that his appellate counsel was ineffective.[2] It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 463 U.S. at 754. The Supreme Court has explained that while "it is still possible to bring a *Strickland* [*v. Washington,* 466 U.S. 668 (1984)] claim based on [appellate] counsel's failure to raise a particular claim, []it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins,* 528 U.S. 259, 288 (2000).

---

[2] While Petitioner's ineffective assistance of appellate counsel could be considered procedurally defaulted because state post-conviction review was the first opportunity that he had to raise this claim, s*ee Guilmette*, 624 F.3d at 291, the Court will reach the merits of the claim.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "A brief that raises every colorable issue runs the risk of burying good arguments … in a verbal mound made up of strong and weak contentions." *Barnes*, 463 U.S. at 753. (citations omitted). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting his ineffective assistance of trial counsel claims. Appellate counsel filed a 50 page brief which included his prosecutorial misconduct claims and a claim that the trial court erred in denying his motion for a new trial. Petitioner has not demonstrated that appellate counsel's strategy in presenting these claims and not raising other claims was deficient or unreasonable, or that any of the claims raised by Petitioner in his post-conviction motion were "dead bang winners." "[A]ppellate counsel cannot be found to be ineffective for failure to raise an issue that lacks merit." *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citation ommitted). Petitioner's ineffective assistance of appellate counsel claims are without merit.

### iii.

In the alternative, Petitioner has not established that a fundamental miscarriage of justice has occurred that would permit this Court to review his procedurally defaulted ineffective assistance of trial counsel claims. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner's actual innocence claim rests on Thomas Mowrer's confession to being the actual murderer. As discussed at length in rejecting Petitioners' first claim, *supra*, Mr. Mowrer's alleged confession was unreliable because it was vague and contradicted by much of the trial evidence, including Petitioner's own admissions that he was the actual killer. Petitioner is not entitled to relief on his remaining claims.

### III.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See*

*Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

**IV.**

Accordingly, it is **ORDERED**, that Petitioner Hastings' petition for a writ of habeas corpus, ECF No. 1, is **DENIED**.

It is further **ORDERED**, that a certificate of appealability is **DENIED**.

It is further **ORDERED**, that permission to appeal in forma pauperis is **DENIED**

Dated: November 21, 2016                s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 21, 2016.

                                    s/Michael A. Sian
                                    MICHAEL A. SIAN, Case Manager